UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

PrO UNLIMITED, INC.

       Plaintiff,

  -against-

KELLY SERVICES, INC.,

       Defendant.
---------------------------------------------------------X

**ORDER**
**CV-04-1813(SJF)(WDW)**

FEUERSTEIN, J.

  Plaintiff PrO Unlimited, Inc. (PrO) commenced this action against defendant Kelly Services, Inc. (Kelly) seeking damages, *inter alia*, for implied indemnification and a declaratory judgment. Thereafter, Kelly moved to dismiss the implied indemnification and declaratory judgment causes of action. By order dated February 25, 2005, I (1) affirmed so much of a report and recommendation of Magistrate Judge William D. Wall dated January 11, 2005 as recommended denying that branch of Kelly's motion as sought dismissal of the declaratory judgment cause of action; (2) rejected so much of the report and recommendation as recommended denying that branch of Kelly's motion as sought dismissal of the implied indemnification cause of action; and (3) dismissed the implied indemnification cause of action with leave to amend the complaint to replead that cause of action. PrO timely filed an amended complaint in accordance with that order. Kelly now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the indemnification cause of action in the amended complaint. For the reasons stated herein, Kelly's motion is granted and the first cause of action is dismissed.

1

I. Background

   A. Factual Background[1]

On or about September 10, 2003, PrO entered into a contingent workforce management services agreement (the agreement) with Mattel, Inc. and its affiliate corporations, including Fisher-Price, Inc. and Pleasant Company (collectively, Mattel). (Amended Complaint [Compl.], ¶ 6). One of the purposes of the agreement was to provide temporary and/or part-time staffing to Mattel. (Id. at ¶ 7). According to PrO, the agreement imposed upon it a non-delegable duty to indemnify Mattel for any losses, claims or thefts by assigned employees. (Id. at ¶¶ 9-10). In accordance with the agreement, PrO subcontracted with Kelly, among others, to provide temporary staffing to Mattel. (Compl. ¶¶ 8, 11).

PrO and Kelly entered into a Letter of Intent dated January 21, 2003, which was subsequently extended by Letters of Intent dated March 19, 2003, April 30, 2003 and September 29, 2003, pursuant to which, *inter alia*, Kelly hired and placed an employee by the name of Evette Wlock (Wlock) at Mattel. (Id. at ¶¶ 12, 17). According to PrO, it contracts out the staffing work to Kelly and has no control over the recruitment, hire or management of an employee, which is solely under the control of Kelly. (Id. at ¶ 24). Moreover, PrO contends that the relationship between the parties and the custom and usage in the industry is that each supplier of personnel is responsible for the acts of their respective employees. (Id. at 25).

---

[1] As is required on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the factual allegations in the amended complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

Over an approximate one year period, Wlock embezzled five hundred sixty-nine thousand one hundred seven dollars and ninety-seven cents ($569,107.97) from Mattel. (Compl. ¶ 18). According to plaintiff, criminal charges were filed in the State of New York, Erie County against Wlock, to which Wlock pled guilty and received a split sentence of jail and probation with partial restitution. (Id. at ¶ 19).

According to PrO, pursuant to the Letters of Intent, Kelly assumed all employer responsibilities for its employees and was required to purchase various insurance coverages, including commercial blanket bond coverage. (Id. at ¶¶ 13-14). According to PrO, the sole purpose of having commercial blanket bond coverage is to insure against a theft by an employee of Kelly and "there can be no other reason for said coverage being required other than the indemnification of [PrO]." (Id. at ¶¶ 15-16). PrO contends that the obligation to purchase commercial blanket bond coverage implies a duty to indemnify PrO for losses resulting from the embezzlement by Kelly's employee Wlock. (Id. at ¶ 27).

Upon discovering the embezzlement by Wlock, Mattel made a demand upon PrO for indemnification in accordance with the agreement. (Id. ¶ 20). Thereafter, PrO demanded that Kelly either reimburse it and/or directly compensate Mattel for the theft of funds by Wlock. (Id. ¶ 22). Kelly rejected PrO's request for indemnification. (Id. at ¶ 26).

B.  Procedural History

On May 3, 2004, PrO commenced this action against Kelly seeking (1) damages for implied indemnification (first cause of action) and negligent hiring (second cause of action), and (2) judgment declaring that Kelly, in accordance with the Letters of Intent, is responsible for the

losses attributable to Wlock (third cause of action).

Thereafter, Kelly moved to dismiss the indemnification and declaratory judgment causes of action. By order dated February 25, 2005, I (1) affirmed so much of a report and recommendation of Magistrate Judge William D. Wall dated January 11, 2005 as recommended denying that branch of Kelly's motion as sought dismissal of the declaratory judgment cause of action; (2) rejected so much of the report and recommendation as recommended denying that branch of Kelly's motion as sought dismissal of the indemnification cause of action; and (3) dismissed the implied-in-fact indemnification cause of action with leave to amend the complaint to replead that cause of action. PrO timely filed an amended complaint in accordance with that order.

Kelly now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the indemnification cause of action in the amended complaint on the grounds: (1) that notwithstanding PrO's conclusory allegation in the amended complaint, the agreement contains no non-delegable duty on the part of PrO to indemnify Mattel for thefts attributable to temporary employees; and (2) that, in any event, PrO failed to allege any facts in the amended complaint establishing (a) that it transferred the purported non-delegable duty to Kelly, (b) that there is a "special relationship" between it and Kelly, and (c) that it does not retain any duty owed directly to Mattel. For the reasons stated herein, Kelly's motion is granted and the first cause of action is dismissed.

II. Discussion

A. Standard of Review of 12(b)(6) Motion

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003)(internal quotations and citations omitted). In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. See, Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). The Court must limit itself to the facts alleged in the complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied upon in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).[2]

---

[2] Since the agreement is attached to the amended complaint, it is, thus, properly considered on this motion.

B. Implied Indemnification

Under New York law[3], indemnity arises out of a contract, either express or implied, "to prevent a result which is regarded as unjust or unsatisfactory." Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985); see also City of New York v. Black & Veatch, No. 95 Civ. 1299, 1997 WL 624985, at * 8 (S.D.N.Y. Oct. 6, 1997). Absent an express agreement to indemnify, an implied right to indemnification may be found (1) based on "the special nature of a contractual relationship between the parties," which is known as an "implied in contract theory" of indemnity or an "implied in fact" indemnity; or (2) when there is "a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other, which is a tort-based theory of indemnity known as an "implied in law" indemnity. Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986). It is undisputed that there is no express right to indemnification in the Letters of Intent. Unlike its response to the prior motion to dismiss, PrO now alleges that both implied-in-law and implied-in-fact indemnity apply here.

1. Implied-in-Fact Indemnity

Indemnity is implied-in-fact when the proposed indemnitee possesses a non-delegable duty to a third party, but has transferred that responsibility by agreement to the proposed indemnitor. See, Black & Veatch, 1997 WL 624985, at * 10; Matter of Poling Transp. Corp., 784 F.Supp. 1045, 1048 (S.D.N.Y. 1992). "The theory is based on a relationship between the

---

[3] As noted in the prior order, the parties implicitly agree that New York law applies to this dispute.

6

two parties from which a covenant to indemnify could fairly be implied." Black & Veatch, 1997 WL 624985, at * 10 (internal quotations and citation omitted). The party seeking indemnification must demonstrate that there is something "special" about the contractual relationship which would warrant finding that a contract for indemnification is implied by the facts. Id. at 11; see also AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., No. 03 Civ. 8493, 2006 WL 1458306, at * 7 (S.D.N.Y. May 25, 2006) (holding that in order to establish implied-in-fact indemnity, a party must show facts demonstrating that there is something special about the contractual relationship that would warrant implying in fact a contract for indemnification). "The burden of establishing an implied agreement to indemnify is a heavy one, especially in business relationships where parties are free to negotiate for express indemnification clauses." Black & Veatch, 1997 WL 624985, at *10.

Moreover, there is no right to implied indemnification where the proposed indemnitee retains a duty it owes directly to the third party, Poling, 784 F.Supp. at 1048; see also Guzman v. Haven Plaza Housing Development Fund Co., 69 N.Y.2d 559, 569, 516 N.Y.S.2d 451, 509 N.E.2d 51 (1987)(finding that the building owner did not have an implied right to indemnification from its tenant, who was obligated under the lease to maintain the steps on which the plaintiff was injured, where the lease did not totally divest the owner of control over and responsibility for maintenance and repair of the premises), or when the proposed indemnitor has not breached a duty owed to the plaintiff. Wainwright v. Matrix Asset Advisors, Inc., No. 05 Civ. 227, 2006 WL 531241, at * 2 (S.D.N.Y. Mar. 6, 2006).

Contrary to the contention of PrO, the agreement does not contain an express non-delegable duty on the part of PrO to indemnify Mattel for the thefts committed by temporary

employees. However, even assuming, *arguendo*, that PrO owed a non-delegable duty to Mattel to indemnify it for thefts committed by temporary employees, the amended complaint does not allege, or contain sufficient factual allegations to establish, (1) that PrO transferred that duty to Kelly; (2) that there existed a "special relationship" between PrO and Kelly; or (3) that PrO did not retain any duty owed directly to Mattel.

      a.      Transfer of Duty to Indemnify to Kelly

There is no express provision in either the agreement or the Letters of Intent that can be construed as a promise by Kelly to indemnify PrO. Contrary to PrO's contention, the obligation to obtain insurance coverage does not equate with an obligation to indemnify under New York law. See McNamee Const. Corp. v. City of New Rochelle, 29 A.D.3d 544, 545, 817 N.Y.S.2d 295 (2d Dept. 2006) (dismissing the contractual indemnification claim on the basis that the contract spoke to insurance only and was silent as to the issue of indemnification, which is a legally-distinct concept); Public Administrator of Kings County v. 8 B.W., LLC, 18 A.D.3d 458, 459, 794 N.Y.S.2d 907 (2d Dept. 2005) (affirming dismissal of the contractual indemnification claim on the basis, *inter alia*, that no promise to indemnify could be clearly implied from the language of the contract and that a promise to provide insurance coverage is distinct from a promise to indemnify); see also Kinney v. G.W. Lisk Co., Inc., 76 N.Y.2d 215, 218, 557 N.Y.S.2d 283, 556 N.E.2d 1090 (1990) (holding that an agreement to procure insurance is not an agreement to indemnify).

### b. Special Relationship

In any event, PrO has not met its heavy burden of establishing that the relationship between it and Kelly was anything more than a business relationship where they were free to negotiate an express indemnification clause. See, e.g. AXA Corporate Solutions, 2006 WL 1458306, at * 7 (finding that the second amended complaint failed to state a claim for implied-in-fact indemnity where plaintiffs failed to meet their heavy burden of establishing a relationship between the parties beyond the apparent business relationship where they were free to negotiate and agree to express indemnification clauses). The "custom and usage" language in the amended complaint does not warrant a finding that the relationship between the parties was of a nature sufficient to find a right of implied indemnification. See, e.g. AXA Corporate Solutions, 2006 WL 1458306, at * 7 (finding that the "regular course of dealing" language in the second amended complaint was not sufficient to warrant a determination that the relationship between the parties was of a special contractual nature where the Court might find a right of implied indemnification).

### c. PrO's Retention of Duty

Moreover, PrO does not dispute that it retained its duty under the agreement to indemnify Mattel. Since the amended complaint does not set forth sufficient facts to satisfy all of the elements of a claim for implied-in-fact indemnification, any cause of action for implied-in-fact indemnification is dismissed.

2. Implied-in-Law or Tort-Based Indemnification

In its reply to PrO's opposition, which raised the issue of implied-in-law indemnification for the first time, Kelly contends that the first cause of action in the amended complaint fails to state a claim for implied-in-law indemnification because (1) it does not allege that PrO and Kelly were tortfeasors; (2) that there is a disparity in fault between PrO and Kelly; (3) that PrO has paid for a loss; (4) that Kelly is primarily responsible for that loss; or (5) that Kelly was even negligent.

Even accepting all of PrO's allegations in the amended complaint as true, as is required on a motion to dismiss, PrO has not alleged, *inter alia*, that it and Kelly are joint tortfeasors. Accordingly, implied-in-law indemnification is not available. See, e.g. Pro Bono Investments, Inc. v. Gerry, No. 03 Civ. 4347, 2005 WL 2429787, at * 17 (S.D.N.Y. Sept. 30, 2005) (finding that implied-in-law indemnification was not available because there was no suggestion that the counter-plaintiffs and counter-defendants were joint tortfeasors).

C. Leave to Amend

Fed. R. Civ. P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Absent a showing of undue delay, bad faith or dilatory motive on the part of the plaintiff, undue prejudice to the defendant, or the futility of the amendment, a plaintiff should be granted leave to replead upon granting a motion to dismiss. Id. at 182, 83 S.Ct. 227; AXA Corporate Solutions, 2006 WL

1458306, at * 8. If amendment would be futile, i.e. if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See <u>Lucente v. International Business Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002).

Since PrO has already had two opportunities to properly plead implied indemnification, but has failed to do so, I find that granting leave to replead again would be futile. Accordingly, PrO's implied indemnification cause of action is dismissed with prejudice.

III. Conclusion

Kelly's motion to dismiss the implied indemnification cause of action in the amended complaint is granted and that cause of action is dismissed with prejudice.

SO ORDERED.

/s/ SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 9, 2007
Central Islip, New York

Copies to:

Connell Foley LLP
888 Seventh Avenue, Suite 3401
New York, New York 10106

Duncan, Fish & Vogel, L.L.P.
317 Middle Country Road
Smithtown, New York 11787-2818